UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HARLAN SLABAUGH, through its Personal Representative, RITA SLABAUGH | ) ) ) ) | CASE NO. **1:24-cv-457** |
| Plaintiff, | ) ) | **COMPLAINT FOR DAMAGES** |
| vs. | ) ) ) | 1. NEGLIGENCE<br>2. STRICT LIABILITY<br>3. BREACH OF EXPRESS WARRANTY |
| FORD MOTOR COMPANY, | ) ) | 4. BREACH OF IMPLIED WARRANTY |
| Defendant. | ) ) ) | 5. GROSS NEGLIGENCE/ ACTUAL KNOWLEDGE<br>6. FAILURE TO WARN |
| | ) | **[DEMAND FOR JURY TRIAL]** |

THE ESTATE OF HARLAN SLABAUGH, through its Personal Representative Rita Slabaugh., for causes of action against the Defendant, asserts as follows:

## INTRODUCTION

1.     Harlan Slabaugh died on August 14, 2022, in an automobile collision in Kalamazoo County, Michigan, when the Defendant's vehicle, which was operating, sustained catastrophic product failures.

## JURISDICTION AND VENUE

2.     Harlan Slabaugh was a resident of the State of Indiana.

3.     The Estate of Harlan Slabaugh is pending in the Marshall County, Indiana Circuit Court Probate Division, Cause No. 50C01-2209-EU-000063.

4.     Rita M. Slabaugh, an Indiana resident, is the Personal Representative of the Estate of Harlan Slabaugh.

5.     Plaintiff is informed and believes, and thereupon alleges, that defendant FORD MOTOR COMPANY is a Delaware corporation organized and existing under the laws of the State of Delaware and doing business throughout the United States, including the State of Michigan.

6.     Upon information and belief, Ford Motor Company is headquartered at Ford World Headquarters in Dearborn, Michigan.

7.     There is complete and total diversity between the parties, as Plaintiff and Personal Representative are citizens of Indiana, whereas FORD MOTOR COMPANY is a Delaware corporation that exists under the laws of the State of Delaware and is headquartered in Michigan.

8.     The damages incurred by the Plaintiff exceed the sum or value of $75,000.00.

9.     Accordingly, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

10.    Pursuant to 28 U.S. Code §1391, Venue is proper in the Western District of Michigan as the motor vehicle collision occurred in this judicial district, and the defects of the 200 FORD 350 caused the death of Harlan Slabaugh in this district.

## GENERAL ASSERTIONS

11.    On or about August 14, 2022, at approximately12:00 A.M., Harlan was driving a 2000 Ford 350 Identification Number (VIN) 1FTSW31FOYEA56918 bearing Indiana License Plate Number WQA619 [hereinafter referred to as the FORD 350], in an intended and foreseeable manner on US131 in Kalamazoo Michigan.

12.    At that time, the FORD 350 was traveling northbound on Hwy 131 in the slow lane of travel (the No. 2 lane) when a 2011 Audi A 4 (AUDI) suddenly rear-ended the FORD 350.  The impact caused the Ford 350 to run off the road and roll several times.

13.    Due to its inherent defects in the driver's seat, the driver's seat belt, and the door latch of the FORD 350, Harlan Slabaugh was ejected from the FORD 350, causing his death.

14.    Upon information and belief, there were at least four (4) inherent defects in the FORD 350 that allowed Harlan Slabaugh to be ejected from the vehicle, causing injury and death:

a. The rear-end collision caused the Driver's Seat Back to fail. FORD MOTOR COMPANY knew or should have known that placing a restrainer behind the seat back would have prevented the failure at issue.

b. At the time of the impact, despite Harlan Slabaugh using a shoulder and lap seat belt, the seat belt near the seat belt latch became separated, broke, or severed, causing the seat belt to be ineffective and fail. The seat belt failure allowed Harlan Slabaugh to be unrestrained, eventually causing Harlan Slabaugh's injuries and death.

c. The seat belt floor anchor affixing the seatbelt to the vehicle frame failed, causing the driver's side front seatbelt to be detached and unaffixed.

d. The latch on the driver's side front door failed, allowing the driver's side front door to fail and open during the collision.

15.     The enumerated failings of the FORD 350 caused the injuries and subsequent death of Harlan Slabaugh.

16.     The above-enumerated list of defects of the FORD 350 is not intended to be an all-inclusive list of defects.

17.  In addition, the FORD 350 was defective, unsafe, lacking crashworthiness, prone to rollover due to defects including but not limited to its high center of gravity and narrow track width, lacking structural integrity, and prone to eject occupants due to defective seat belts, inadequate occupant restraint systems (including, but not limited to the absence of side canopy or curtain airbags), and defective occupant restraint systems (including the absence of laminated/glazed glass) among other defects.

18.  The Ford 350 was not reasonably safe when this FORD 350, with VIN Number 1FTSW31FOYEA56918, left the care and control of FORD MOTOR COMPANY.

19.  A practical and technically feasible alternative production practice was available that would have prevented the harm Harlan Slabaugh experienced without significantly impairing the usefulness or desirability of the product to users and would not have created an equal or greater risk of harm to others.

20.  The term SUBJECT CRASH refers to the above-referenced collision involving the FORD 350 in which Harlan Slabaugh suffered severe injuries and death.

21.     The defects listed above are attributable to FORD MOTOR COMPANY as those defects occurred while in the care and custody of FORD MOTOR COMPANY, the defects were present in the FORD 350 at the time the vehicle left the manufacturer and had the FORD 350 not contained the defects, Harlan Slabaugh would not have suffered his severe injuries and subsequent death.

**FIRST CAUSE OF ACTION**

## FOR NEGLIGENCE
## AS AGAINST DEFENDANT FORD MOTOR COMPANY

22.     Plaintiff incorporates here by reference all paragraphs (including 1 through 21 above) of this Complaint and repeats all assertions and allegations of said paragraphs as though set forth here in full.

23.     Harlan Slabaugh was the registered owner of the FORD 350 at the time of the SUBJECT CRASH.

24.     The FORD 350 was marketed, distributed, and sold by FORD MOTOR COMPANY.

25.     At all times relevant herein, Defendant FORD MOTOR COMPANY was and is engaged in the automotive business, including, but not limited to selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, retailing, analyzing, inspecting, supplying and placing into the stream of commerce, certain products and their component parts, ingredients, packaging, attachments, associated warnings and constituents thereof, or lack of the same, known as the subject FORD 350.

26.     Defendant FORD MOTOR COMPANY including their employees, agents, directors, officers, stockholders, partners, and associates, had a legal duty to adequately and properly manage and operate their business and their manufacturing, distribution, and retail operations; to adequately and properly train and supervise their employees and agents, including their designers, inspectors, quality control agents and other manufacturing, testing, distribution, marketing, sales and delivery personnel; and to act without negligence, conscious disregard or other wrongful conduct.

27.     Defendant FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners, and associates, failed to adequately and properly manage and operate their business and their design, manufacturing, and distribution facilities; failed to adequately and properly train and supervise their employees and agents, including designers, inspectors, quality control agents, and other manufacturing, distribution, marketing, sales, and delivery personnel; failed to act without negligence, conscious disregard or other wrongful conduct in that, among other things to be discovered, said Defendant failed to conduct

themselves properly, adequately interact and coordinate business matters with others; and failed to properly train and supervise their employees and agents regarding employment duties, and the design, test manufacture, inspection, marketing, sales, delivery, demonstration and advertising of their merchandise, including, but not limited to the subject FORD350.

28.     FORD MOTOR COMPANY expected the FORD 350 to reach the consumer, Harlan Slabaugh, without substantial change to the condition in which FORD MOTOR COMPANY produced and sold it.

29.     The FORD 350 did reach Harlan Slabaugh without substantial change to the condition in which FORD MOTOR COMPANY produced and sold it.

30.     FORD MOTOR COMPANY owed a duty to Harlan Slabaugh to place a reasonably safe vehicle into the stream of commerce free of defects.

31.     FORD MOTOR COMPANY failed to place a reasonably safe vehicle into the stream of commerce as it negligently designed, tested, approved, manufactured, and "produced" the subject vehicle in that it failed to exercise reasonable care to prevent the subject vehicle from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable manner.

32.     Harlan Slabaugh did not alter, amend, or substantially change the condition of the F350 as he received it from FORD MOTOR COMPANY.

33.     The Defendant's failures, including the defendant designers, manufacturers, distributors, and retailers constituted a breach of the aforementioned duties that, in a foreseeable manner, legally and proximately caused the severe and permanent injuries and other damage to Harlan Slabaugh herein asserted.

34.     In addition, FORD MOTOR COMPANY was negligent, careless, and/or grossly negligent and careless when it sold, designed, manufactured, fabricated, distributed, retailed, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, bought, leased, rented, vended, installed, handled, labeled, compounded, promoted, furnished, analyzed, inspected, supplied, and place into the stream of commerce, the aforementioned FORD 350 including, but not limited to, its component parts, ingredients, packaging, attachments, associated warnings, and

constituents thereof, and lack of the same. Said negligence included, but was not limited to, supplying inadequate and improper on-product and other warnings and instructions regarding the defects and dangerous propensities of the FORD 350.

35. Defendant, as asserted in the preceding paragraphs, was negligent and careless and/or grossly negligent and careless when it failed to inform purchasers and users of said FORD 350 and others, including Harlan that the aforementioned FORD 350 was defective, unsafe, lacking crashworthiness, prone to rollover due to defects including but not limited to its high center of gravity and narrow track width, lacking structural integrity, and prone to eject occupants due to defective seat belts, inadequate occupant restraint systems (including, but not limited to the absence of side canopy or curtain airbags), and defective occupant restraint systems (including the absence of laminated/glazed glass) among other defects.

36. Plaintiff is informed and believes and thereupon alleges that in conducting its business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned FORD 350, Defendant, FORD MOTOR COMPANY,  including their employees, agents, directors, officers, stockholders, partners and associates either lacked or failed to use the knowledge and skill ordinarily possessed by similarly-situated persons, companies, designers, manufacturers, testers, assemblers, inspectors, distributors, retailers and suppliers of such products.

37. In conducting their business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned FORD 350, Defendant, FORD MOTOR COMPANY,  including their employees, agents, directors, officers, stockholders, partners and associates, had prior knowledge (in 1999, and before) of the defective and dangerous rollover propensity of the aforementioned FORD 350 and

other defects.

38.     Defendant, FORD MOTOR COMPANY, including its employees, agents, directors, officers, stockholders, partners, and associates conducted and/or were aware of extensive research and testing on the aforementioned FORD 350 model line and predecessor models that affirmed the vehicle's inability to pass internal and industry-standard stability and handling tests, specifically rollover testing and other defects.

39.     FORD MOTOR COMPANY also knew that the FORD 350 model seats and other components were and are so dangerously designed that rollover could occur, and the seats and other components of the vehicle could cause severe injuries and death.

40.     Defendant, FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners, and associates, conducted and/or were aware of extensive research and testing on FORD MOTOR COMPANY vehicles and others that affirmed the safety benefits of using the proper seats to prevent and/or minimize occupant ejection.

41.     Plaintiff is informed and believes and thereupon alleges that Defendant, FORD MOTOR COMPANY,  including their employees, agents, directors, officers, stockholders, partners, and associates, chose not to delay production or sales to address the dangerous defects and decided to press ahead with the highly profitable production of the aforementioned FORD 350 model line and related sales in conscious disregard for the health and safety of consumers, including but not limited to Harlan Slabaugh.

42.     Defendant, FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners, and associates, chose to ignore the recommendations of FORD MOTOR COMPANY design and production engineers and others who recommended various design changes to alleviate the defects in the seats and other aspects of the subject FORD 350 model line.

43.     As a direct, legal, and proximate result of the described negligence and carelessness or gross negligence and carelessness on the part of Defendant FORD MOTOR COMPANY, the subject FORD 350 went out of control and rolled over as described in the preceding paragraphs.  Due to the inherent instability of the subject FORD 350 and other defects described above, severe, grievous injuries and death of Harlan Slabaugh when the subject FORD 350 failed to function adequately, safely, or as designed.

44.     The aforementioned acts, omissions, despicable conduct, and malfeasance were committed by Defendant FORD MOTOR COMPANY in conscious disregard of the rights and safety of others.

45.     The defective and dangerous design and performance of the subject FORD 350 and the fact that it was unsafe for its intended use and purpose when employed in a reasonable and foreseeable manner by Harlan Slabaugh was known to defendant FORD MOTOR COMPANY, or in the exercise of reasonable care, should have been known and discovered by the Defendant.  Further, the defective and dangerous condition of the subject FORD 350, including but not limited to the vehicle's lack of crashworthiness, rollover instability, lack of structural integrity, defective occupant restraint systems (including, but not limited to, the absence of side canopy or curtain airbags and seats, were not made known to Harlan Slabaugh by said FORD MOTOR COMPANY.

46.     Defendant, FORD MOTOR COMPANY, knew of the danger of severe injury or death from said FORD 350 due to the defectively designed and manufactured nature of the FORD 350, and Defendant consciously decided to design, manufacture, distribute, and sell said FORD 350 in its defective state without adequate warning or proper instructions to owners and users of said vehicle to save money, increase profits and prevent loss of sales.  These despicable acts by Defendant FORD MOTOR COMPANY deliberately prevented the general public, including Harlan Slabaugh, from becoming aware that the FORD 350 was and is unsafe, dangerous, and defective.

47.     Further, Defendant, FORD MOTOR COMPANY, knew or, in the exercise of reasonable care, should have known of the many other earlier deaths, injuries and lawsuits in substantially similar crashes caused by the model of the subject vehicle, including earlier versions and similar products, due to the inadequate and improper warnings and instructions, and said design and manufacturing defects, lack of crashworthiness, lack of structural integrity, defective occupant restraint systems, and failure to warn regarding the imminent danger of rollovers and the subject FORD 350s inherent instability, and said other defects, but in conscious disregard of the rights and safety of others, including the plaintiffs herein, said Defendant chose not to design or redesign the FORD 350 in a proper and defect-free manner, properly and fully recall the product, and/or adequately warn of the defects and dangers.

48.     The aforementioned conscious disregard and despicable conduct of the FORD

MOTOR COMPANY directly, legally, and proximately caused severe injuries to Harlan Slabaugh as herein described.   Plaintiff further asserts that such defects in the FORD 350 resulted in a risk of vehicle rollover, loss of control, injury, and death that far outweighed any benefits in the related design of the FORD 350.

49.     In addition, the acts, omissions, negligence, malfeasance, nonfeasance, despicable conduct, and conscious disregard by FORD MOTOR COMPANY were done by employees of the defendant, and each of them with the advance knowledge, authorization, approval, participation, or ratification of the officers, directors and/or managing agents of Defendant, and each of them.

50.     As a direct, legal, and proximate result of the combined and concurrent wrongful conduct of all of FORD MOTOR COMPANY and the defective nature of the FORD 350, Harlan Slabaugh suffered and sustained catastrophic injuries, loss, and death.

51.     In addition, as a direct, legal, and proximate result of the combined and concurrent wrongful acts of all the Defendant, FORD MOTOR COMPANY, Harlan Slabaugh sustained the following economic damages within the state of Michigan.

(a)     Medical, ambulance, and incidental expenses, in an amount to be established at the time of the trial according to proof;

(b)     Financial loss, including, but not limited to, loss of wages and salary expectancy in an amount to be established at the time of trial according to proof;

(c)     Loss or damage to tangible personal property, in an amount to be established at the time of trial according to proof; and

52.     In addition, as a direct, legal, and proximate result of the combined and concurrent wrongful acts of all the Defendant, FORD MOTOR COMPANY, Harlan Slabaugh sustained noneconomic loss, including pain, suffering, mental anguish, emotional distress, permanent and traumatic injuries, including devastating head and body injuries causing death.

53.     As a result of the death of Harlan Slabaugh caused by FORD MOTOR COMPANY's negligence, or gross negligence, Harlan Slabaugh's wife and children incurred and will continue to incur damages for economic losses, including past and future loss of material support and other valuable financial benefits his family would have received from Harlan Slabaugh had he not been killed by the SUBJECT CRASH.

WHEREFORE, The Estate of Harlan Slabaugh, through Rita Slabaugh, as Personal Representative of the Estate of Harlan Slabaugh, Deceased, respectfully requests this Court enter a Judgment against Defendant, FORD MOTOR COMPANY, for an amount to be determined at a later date but above $75,000.01, to fairly, adequately, and fully compensate the Estate for Decedent's injuries, damages, together with court costs, interest and attorney fees so wrongfully incurred.

### SECOND CAUSE OF ACTION
### PUNITIVE DAMAGES AGAINST DEFENDANT FORD MOTOR COMPANY

54.     Plaintiff incorporates here by reference all paragraphs (including 1 through 53) of this Complaint and repeats all assertions and allegations of said paragraphs as though set forth here in full.

55.     Plaintiff is informed and believes and thereupon allege that the aforementioned FORD 350 and its component parts, ingredients, packaging, mounting, associated warnings, and constituents thereof, or lack of same, were defectively sold, designed, manufactured, fabricated, distributed, retailed, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, leased, rented, vended, installed, handled, labeled, promoted, furnished, analyzed, inspected, supplied, and placed into the stream of commerce by Defendant FORD MOTOR COMPANY.  In addition, said FORD 350 failed to perform as safely as an ordinary consumer of said equipment would have expected when it was used in a manner reasonably foreseeable by the FORD MOTOR COMPANY.  In addition, the benefits of the design of said FORD 350 did not outweigh the risks inherent in its design.

56.     As alleged herein above, on or about August 14, 2022, Harlan was using the FORD 350 in an intended and foreseeable manner when said FORD 350 failed to perform reasonably and properly.  In addition, the FORD 350 failed without warning, thereby causing severe injuries and death to Harlan and other damages to the plaintiff, as herein alleged.

57.     Plaintiff is informed and believes and thereupon allege that said defendant failed to warn purchasers and users of the FORD 350 and the general public, including Harlan Slabaugh that said FORD 350 as sold, designed, manufactured, fabricated, distributed, retailed, wholesaled,

recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, leased, rented, vended, installed, handled, labeled, promoted, furnished, analyzed, inspected, supplied, and placed into the stream of commerce, could undergo sudden failure, including, but not limited to loss of stability and control, loss of adequate occupant protection due to faulty seat belts, defective design, defective structure, lack of crashworthiness, and defective occupant restraint systems even when used in a reasonably foreseeable manner.

58.    The defects existed at the time that said FORD 350 was tested, manufactured, distributed and sold by FORD MOTOR COMPANY, and said FORD 350 reached Harlan Slabaugh without substantial change in the condition in which it was manufactured, distributed and sold by FORD MOTOR COMPANY.  Defendant knew that said FORD 350 was to be used without inspection for defects by Harlan Slabaugh.

59.    The defects, as well as Defendant's failure to warn directly, legally, and proximately caused the aforementioned severe injuries and death to Harlan Slabaugh.

60.    Further,  FORD MOTOR COMPANY knew, or in the exercise of reasonable care should have known, of the numerous other earlier injuries and lawsuits caused by the model of vehicle in substantially similar crashes, including earlier versions and similar equipment, due to the inadequate and improper design, defective manufacturing and lack of proper warnings as specifically described earlier, and yet, in conscious disregard of the rights and safety of others, including Harlan Slabaugh, Defendant chose not to design or redesign the FORD 350 with defective-free components and materials, or proper instructions and warnings, or conduct an appropriate and reasonable recall of the FORD 350.

61.    In addition, FORD MOTOR COMPANY had the unfettered ability, after years of extensive in-house, government, and independent testing, to minimize the substantial risk of severe bodily harm or death caused by the FORD 350 by redesigning or warning of the potential for serious risk or harm, thereby minimizing or eliminating said potential.  Defendant consciously chose not to take such steps, including, but not limited to, not providing proper design and manufacturing provisions, all of which allowed Defendant to save money, increase profit margin, and avoid loss of sales. These acts by Defendant prevented the public from becoming aware that the FORD 350 was

unsafe, dangerous, and defective, thereby causing the herein-described injuries and death of Harlan Slabaugh.

62.     Additionally, the aforementioned malfeasance, nonfeasance, defects, failure to warn, conscious disregard and despicable conduct were committed with the advance knowledge, authorization, approval, and ratification of officers, directors, and/or managing agents of the aforesaid Defendant FORD MOTOR COMPANY.

63.     The herein-described acts and conduct of the FORD MOTOR COMPANY were carried out in conscious disregard of the rights and safety of foreseeable users of the FORD 350, including Harlan Slabaugh herein, in that the Defendant was aware or should have been aware through prior substantially similar crashes, collisions, rollovers, near-rollovers, and existing testing and engineering data of the substantial probability that the use of the FORD 350 in its defective state, without proper provisions, labels, warnings and directions to the consumer, would likely cause injury and/or death and, despite such knowledge, Defendant failed to warn Harlan Slabaugh and other users of the product of said risks of severe injuries and/or death.

64.     In addition, said defendant, through earlier inspection and testing of the FORD 350, including earlier versions and similar equipment, was aware that said FORD 350 was defective and that it would, in many foreseeable circumstances, cause injuries and/or death, which failure could be prevented by proper warnings or a change in the design of the FORD 350.  Despite this knowledge and that Defendant knew of warnings or a design change that would eliminate these dangers, Defendant consciously elected to design, manufacture, and sell the defective FORD 350.  In addition, Defendant failed to inform the general public, in particular, Harlan Slabaugh herein, of the hazards that Defendant knew to be inherent in the design of the FORD 350, but rather consciously elected to manufacture and sell what Defendant knew or should have known to be an unsafe product to members of the general public by falsely describing the FORD 350 as safe and defect-free and a device that would protect against injury and/or death in the event of a crash or collision.

65.     Further, said Defendant marketed a product that they knew or should have known to be unsafe, and Defendant continued to do so despite the fact that they received further clear evidence of the unreasonably dangerous character of the FORD 350.  The intentional marketing and distribution of what Defendant had learned was a dangerous product, a product that they knew was

causing injuries and/or death to consumers and for which they had a practical and inexpensive alternative design or warning to prevent such injuries, constitutes conduct carried on by said Defendant in conscious disregard of the rights and safety of others, which is despicable conduct that subjected persons including plaintiffs to injury and death.

66.     In conducting their business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned FORD 350, Defendant, FORD MOTOR COMPANY,  including their employees, agents, directors, officers, stockholders, partners and associates, had prior of the defective design of the aforementioned FORD 350.

67.     Defendant, FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners, and associates, conducted extensive research and testing on the aforementioned FORD 350 model line and predecessor models that affirmed the vehicle's inability to pass internal and industry-standard stability and handling tests.

68.     Defendant FORD MOTOR COMPANY, including its employees, agents, directors, officers, stockholders, partners, and associates, chose not to delay production to address the dangerous defects and chose to press ahead with the highly profitable production of the aforementioned FORD 350 model line in conscious disregard for the health and safety of consumers, including but not limited to Harlan Slabaugh.

69.     Defendant FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners, and associates, chose to ignore the recommendations of their own design and production engineers, who recommended various design changes to alleviate the defects of the subject FORD 350 model line.

70.     Defendant FORD MOTOR COMPANY engaged in the aforementioned despicable conduct, acts, malfeasance, and nonfeasance in conscious disregard of the rights and safety of others, including Harlan Slabaugh.

71.     As a direct, legal, and proximate result of the combined and concurrent wrongful

conduct of Defendant FORD MOTOR COMPANY, Harlan Slabaugh suffered and sustained injuries and death.

72.    As a result of the serious injuries and death of Harlan Slabaugh caused by the defective FORD 350, Harlan Slabaugh's wife and children incurred and will continue to incur damages for economic losses, including past and future loss of material support and other valuable financial benefits that plaintiff would have received from Harlan Slabaugh if he had survived the SUBJECT CRASH.

WHEREFORE, The Estate of Harlan Slabaugh, through Rita Slabaugh, as Personal Representative of the Estate of Harlan Slabaugh, Deceased, respectfully requests this Court enter a Judgment against Defendant, FORD MOTOR COMPANY, for an award of exemplary damages, in an amount properly calculated to punish Defendant for their despicable conduct and conscious disregard for the safety of others and to deter any such despicable conduct and conscious disregard for the safety of others in the future, in addition to other noneconomic and economic damages sought in this Complaint.

### THIRD CAUSE OF ACTION
### FOR BREACH OF EXPRESS WARRANTY
### AGAINST DEFENDANT FORD MOTOR COMPANY,

73.    Plaintiff incorporates here by reference all paragraphs (including 1 through 72) and repeats all assertions and allegations of said paragraphs as though set forth here in full.

74.    At all times herein mentioned, Defendant FORD MOTOR COMPANY expressly warranted to plaintiffs and the general consuming public, through print, media, and television advertising and other express means, that the FORD 350 was of merchantable quality and was safe for its ordinary, intended, foreseeable and expected use, and that such use would not cause injuries of the nature of the herein.  In addition, said Defendant expressly warranted that there was no substantial risk of rollover, lack of crashworthiness, or other inherent failures and defects in said FORD 350.

75.    Said FORD 350 was not of merchantable quality and was not as warranted by said Defendant, thus constituting a breach of said warranty and as a direct, legal, and proximate result of Harlan Slabaugh's reliance on said warranties and the breach of said warranties, Harlan Slabaugh and

plaintiff sustained the herein-described serious and permanent injuries, losses and damages.

76.     Plaintiff is informed and believes and thereupon asserts that said Defendant received timely notice of said breach of warranties.

77.     Plaintiff is informed and believes, and thereupon asserts, that said Defendant knew or, in the exercise of reasonable care, should have known of the dangerous, defective, unfit, and unsafe condition of the aforementioned FORD 350 and the fact that it was not safe or suitable for its intended use nor of merchantable, safe, or operational quality.

78.     As a direct, legal, and proximate result of said breach of warranties and the defective nature of the FORD 350, Plaintiff suffered and sustained loss and damages.

WHEREFORE, The Estate of Harlan Slabaugh, through, Rita Slabaugh, as Personal Representative of the Estate of Harlan Slabaugh, Deceased, respectfully requests this Court enter a Judgment against Defendant, FORD MOTOR COMPANY, for an amount to be determined at a later date but above $75,000.01, to fairly, adequately, and fully compensate the Estate for Decedent's injuries, damages, together with court costs, interest and attorney fees so wrongfully incurred.

**FOURTH CAUSE OF ACTION**
**FOR BREACH OF IMPLIED WARRANTY**
**AGAINST DEFENDANT FORD MOTOR COMPANY**

79.     Plaintiff incorporates here by reference all paragraphs (including 1 through 78) of this Complaint and repeats all assertions and allegations of said paragraphs as though set forth here in full.

80.     Defendant FORD MOTOR COMPANY impliedly warranted to purchasers and users of the FORD 350 and the general public, including Harlan Slabaugh, that it was suitable for its intended use, was of merchantable quality, and that there was no substantial risk of sudden failure.

81.     FORD MOTOR COMPANY knew or had reason to know that the particular purposes for which the FORD 350 was to be used and that the purchasers and users, such as Harlan, would rely on FORD MOTOR COMPANY's skill or judgment in designing, testing, manufacturing, installing and/or furnishing goods suitable for such purposes and uses.

82.     The subject vehicle was not fit for the particular purposes for which it was intended and for which it was used because the FORD 350 had a high center of gravity and narrow track

width, lacked structural integrity, and prone to eject occupants due to defective seat belts, inadequate occupant restraint systems (including, but not limited to the absence of side canopy or curtain airbags), and defective occupant restraint systems (including the absence of laminated/glazed glass) among other defects.

83. Said FORD 350 was not of merchantable quality and was not as warranted by said Defendant, thus constituting a breach of said warranties and, as a direct, legal, and proximate cause of the reliance on said warranties by Harlan and the breach of said warranties, Harlan Slabaugh suffered the herein described serious injuries and death.

84. Plaintiff is informed and believes, and thereupon asserts, that Defendant knew, or in the exercise of reasonable care, should have known, of the dangers, defective nature, and unfit and unsafe condition of the aforementioned FORD 350 and the fact that it was not safe, fit, or suitable for its intended use, nor of merchantable, safe, or operational quality.

85. The defective conditions of the FORD 350 constitute a breach by FORD MOTOR COMPANY of implied warranties, rendering them liable for Harlan Slabaugh's injuries and death.

86. As a direct, legal, and proximate result of the said breach of warranties and defective nature of the FORD 350, Harlan Slabaugh suffered severe injuries, pain and suffering, emotional distress, shock to the nervous system, mental anguish, and ultimately death. In addition, HARLAN SLABAUGH suffered and sustained loss and damages, including death

WHEREFORE, The Estate of Harlan Slabaugh, through, Rita Slabaugh, as Personal Representative of the Estate of Harlan Slabaugh, Deceased, respectfully requests this Court enter a Judgment against Defendant, FORD MOTOR COMPANY, for an amount to be determined at a later date but above $75,000.01, to fairly, adequately, and fully compensate the Estate for Decedent's injuries, damages, together with court costs, interest and attorney fees so wrongfully incurred.

### FIFTH CAUSE OF ACTION AGAINST FORD MOTOR COMPANY
### GROSS NEGLIGENCE/ACTUAL KNOWLEDGE

87. Plaintiff incorporates here by reference all paragraphs of this Complaint and repeats all assertions (including Paragraphs 1-86) and allegations of said paragraphs as though set forth here in full.

88.     Pursuant to MICH COMP. LAWS §600.2946(a)(3), no damages cap or limitations applies to noneconomic loss, as the death of Harlan Slabaugh was the result of FORD MOTOR COMPANY's gross negligence and/or FORD MOTOR COMPANY had actual knowledge that the FORD F350 was defective and that there was a substantial likelihood that the defect would cause Harlan Slabaugh's injuries and death yet willfully disregarded that knowledge in the manufacturing and distribution of the FORD F350.

89.     Gross negligence, in the context of a product liability matter, means conduct so reckless as to demonstrate a substantial lack of concern for whether injury results. MICH. COMP. LAWS §600.2945(d).

90.     In conducting their business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned FORD 350, Defendant, FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners and associates, had prior of the defective design of the aforementioned FORD 350.

91.     Defendant, FORD MOTOR COMPANY, including its employees, agents, directors, officers, stockholders, partners, and associates, conducted extensive research and testing on the aforementioned FORD 350 model line and predecessor models that affirmed the vehicle's inability to pass internal and industry-standard stability and handling tests.

92.     Defendant, FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners, and associates, chose not to delay production to address the dangerous defects and decided to press ahead with the highly profitable production of the aforementioned FORD 350 model line in conscious disregard for the health and safety of consumers, including but not limited to Harlan Slabaugh.

93.     FORD MOTOR COMPANY's conscious disregard of precautions and measures to attend to safety and a singular disregard for substantial risk in its quest for profits ultimately caused Mr. Slabaugh's death.

94.     FORD MOTOR COMPANY had actual knowledge of the multiple defects of the FORD 350 and the substantial likelihood that the defects would cause Slabaugh injuries and death.

95.     Despite FORD MOTOR COMPANY's actual knowledge, it willfully disregarded that knowledge when it placed the defective FORD 350 into the stream of commerce.

96.     As further set out in previous paragraphs of this complaint, as a direct and proximate consequence of the grossly negligent acts and/or omissions of FORD MOTOR COMPANY and actual knowledge of the danger the vehicle possessed, Harlan Slabaugh sustained severe injuries, pain and suffering, emotional distress, shock to the nervous system and mental anguish and ultimately death.

WHEREFORE, The Estate of Harlan Slabaugh, through, Rita Slabaugh, as Personal Representative of the Estate of Harlan Slabaugh, Deceased, respectfully requests this Court enter a Judgment against Defendant, FORD MOTOR COMPANY, for an amount to be determined at a later date but above $75,000.01, to fairly, adequately, and fully compensate the Estate for Decedent's injuries, damages, together with court costs, interest and attorney fees so wrongfully incurred.

## SIXTH CAUSE OF ACTION
## FOR FAILURE TO WARN

97.     Plaintiff incorporates here by reference all paragraphs (including 1 through 96) of this Complaint and repeats all assertions and allegations of said paragraphs as though set forth here in full.

98.     FORD MOTOR COMPANY, in conducting their business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the aforementioned FORD 350, Defendant, FORD MOTOR COMPANY,  including their employees, agents, directors, officers, stockholders, partners and associates, had prior of the defective design of the aforementioned

FORD 350.

99.    Defendant, FORD MOTOR COMPANY, including their employees, agents, directors, officers, stockholders, partners, and associates, conducted extensive research and testing on the aforementioned FORD 350 model line and predecessor models that affirmed the FORD 350's inability to pass internal and industry-standard stability and handling tests.

100.    Defendant FORD MOTOR COMPANY had actual and/or constructive knowledge of the danger possessed by the F350.

101.    Defendant, FORD MOTOR COMPANY, had no reason to believe that the consumers, including Slabaugh, knew this danger. Indeed,  FORD MOTOR COMPANY's actions in advertising to Slabaugh and the general consuming public, through print, media, and television advertising and other express means, that the F350 was of merchantable quality and was safe for its ordinary, intended, foreseeable, and expected use, and that such use would not cause injuries of the nature of the herein hid the knowledge from consumers of the actual dangers the F350 possessed.

102.    By way of its advertising and actions, FORD MOTOR COMPANY wholly failed to exercise reasonable care to inform consumers of the danger the F350 posed.

103.    Harlan Slabaugh was not a "sophisticated user" of the FORD 350 as defined under MICH. COMP. LAWS §600.2945(j).

WHEREFORE, The Estate of Harlan Slabaugh, through, Rita Slabaugh, as Personal Representative of the Estate of Harlan Slabaugh, Deceased, respectfully requests this Court enter a Judgment against Defendant, FORD MOTOR COMPANY, for an amount to be determined at a later date but above $75,000.01, to fairly, adequately, and fully compensate the Estate for Decedent's injuries, damages, together with court costs, interest and attorney fees so wrongfully incurred.

COMPLAINT FOR DAMAGES

**WHEREFORE**, the Estate of Harlan Slabaugh prays for judgment against the Defendant as follows:

1. For general damages in an amount exceeding the jurisdictional limits of this Court, to be ascertained at the time of trial;

2. For noneconomic damages, including Harlan Slabaugh's physical pain and suffering and mental and emotional pain, suffering, anguish, anxiety and distress, and death in an amount according to proof and without regard to any damages cap or limitation pursuant to MICH COMP. LAWS §600.2946(a)(3);

3. For economic damages, including Harlan Slabaugh's medical, hospital, and incidental expenses, in amounts according to proof;

4. For further economic damages, including loss of earnings and loss of earning capacity, according to proof;

5. For further economic damages, including loss and damage to valuable tangible items of Harlan Slabaugh's personal property, in an amount according to proof;

6. For costs of suit incurred herein;

7. For pre-judgment interest and other interest as provided by law; and

8. For such other and further relief, including but not limited to attorneys' fees, as the Court may deem just and proper.

9. For any other damages permitted under the Michigan Wrongful Death Act and the Michigan Products Liability Act.

In addition, Plaintiff prays for judgment against Defendant FORD MOTOR COMPANY, as follows:

10. For an award of exemplary damages, in an amount properly calculated to punish the Defendant for their despicable conduct and conscious disregard for the safety of others and to deter any such despicable conduct and conscious disregard for the safety of others in the future.

**COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

1

Plaintiffs, by and through counsel, hereby demand a trial by jury.

2

3

4                                                   Respectfully submitted,

5

6

7                                               James P. Buchholz (#17023-02)

8                                               TOURKOW, CRELL, ROSENBLATT
                                                & JOHNSTON

9                                               127 W. Berry Street, Ste. 1200
                                                Fort Wayne, Indiana 46802

10                                              Phone: (260) 426-0545
                                                jbuchholz@tcrjlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**